IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROY GENE REYNOLDS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-14-3465 |
| SGT. T. WILLIAMS, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Defendants Brumage,[1] Davis, Scott, Stanholtz, and Williams filed a Motion to Dismiss or for Summary Judgment (ECF 16) in response to the above-captioned civil rights Complaint. Plaintiff opposes the motion. ECF 18. Also pending are Plaintiff's Motions to Appoint Counsel[2] (ECF 12 and 13) and Defendants' Motion for Extension of Time (ECF 15). The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow summary judgment will be entered in favor of Defendants.

### Background

Plaintiff Roy Gene Reynolds ("Reynolds") was at all times relevant to the instant case incarcerated at Roxbury Correctional Institution ("RCI").[3] He claims that on October 8, 2014, at approximately 8:15 a.m., Officers Brumage and Scott escorted him to "ASIA." He states at the

---

[1] The Clerk shall be directed to correct the docket to reflect the correct spelling of Defendants' names.

[2] A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No hearing is necessary to the disposition of this case and there are no exceptional circumstances that would warrant the appointment of an attorney to represent plaintiff under §1915(e)(1). Thus, his motions for appointment of counsel shall be denied.

[3] Plaintiff is now confined at North Branch Correctional Institution. ECF 16-1 at p. 1.

time he had a sprained ankle and had asked for medical attention for it, but was denied same. During the escort, Reynolds claims that he stopped walking because of his ankle and, in response, Scott "choked him out" and slammed him down on his head. As a result, Reynolds states his right hand was fractured. ECF 1 at p. 3; ECF 4 at p. 3.

Reynolds further claims that on August 24, 2014, Sgt. Williams along with Officers Days and Shanholtz assaulted him by beating him in the chest and stomping on his back while he was in the shower. He states the assault caused him chest pains and that Defendants were "squeezing [his] right broken hand." ECF 4 at p. 3, *see also* ECF 1 at p. 3. Reynolds seeks monetary damages for physical and mental pain and claims he suffers from PTSD (Post Traumatic Stress Disorder) as a result of the incidents described. *Id*.

Defendants observe that Reynolds' allegation concerning events taking place on August 24, 2014, appears to be a mistake on his part regarding the date as there is no record of an incident involving Reynolds and the named Defendants on that date. ECF 16 at Ex. 2. Defendants further assert that on October 8, 2014, at approximately 8:15 a.m., Defendant Brumage was escorting Reynolds from the dispensary back to "ASIA"[4] when Reynolds stated, "I am not fucking going there." *Id*. at Ex. 3, pp. 4, 6, 10, 12 – 13, 19, and 22. Brumage claims he attempted to explain to Reynolds he could not be put in a regular holding cell due to his loud and disruptive behavior. He alleges Reynolds then began to pull away from him and attempted to run to the front of the dispensary. Despite giving Reynolds direct orders to stop resisting, Brumage claims Reynolds became belligerent and refused to comply. *Id*.

Defendant Darnell Scott states he witnessed Reynolds resisting Brumage's escort and assisted Brumage's efforts to regain control of Reynolds. Once Brumage and Scott regained control of him, Reynolds was escorted to the ASIA area where he again became aggressive.

---

[4]   ASIA is the acronym for Administrative Segregation Isolation Area. ECF 16-1 at p. 2.

Scott states that Reynolds grabbed Brumage's right forearm and stated, "I'm not going any further with you and this stupid nigger." Reynolds then used his left leg to "mule kick" Brumage in the left shin. During the struggle to regain control of Reynolds, Reynolds "flung himself backwards in an attempt to get away." ECF 16 at Ex. 3, p. 4. When Reynolds did this, Brumage observed that Reynolds hit the back of his head. Brumage and Scott were continuing efforts to regain control of Reynolds when he threw himself down to the floor, pulling Brumage down with him and causing Brumage to injure his back. Scott and Brumage managed to regain control of Reynolds and placed him into the ASIA cell. *Id.*

Immediately following the struggle, Reynolds was medically evaluated and observed to have a "small red nodule on [the] back of his head and his right hand [was] swollen and discolored." *Id.* at p. 12. Medical staff ordered an RCI staff transport of Reynolds to Maryland Correctional Institution – Hagerstown ("MCIH") hospital for an x-ray of his right hand. It was determined that Reynolds had sustained a broken right pinky finger during the incident. *Id.*

A report submitted by Officer D. Johnson confirms that Reynolds threw himself backward towards the floor and that Brumage tried to catch Reynolds, but was unable to do so. ECF 16 at Ex. 3, p. 13. He adds that Reynolds yelled at Scott calling him stupid and saying he hurt Reynolds' head. *Id.* Reynolds then got to his knees and Brumage helped him to his feet. *Id.* Johnson opened ASIA cell #9 for Reynolds who entered the cell and Johnson removed the handcuffs through the slot without further incident.[5] *Id.*

---

[5] Video surveillance was reviewed for purposes of the serious incident report prepared as a result of the incident. Captain Crist initially reviewed the footage and reported the only thing captured was a short segment of Scott and Brumage escorting Reynolds through a hallway leading to the ASIA area. ECF 16 at Ex. 3, p. 8. Captain Crist reported that the footage could not be copied to a DVD; thus, the segment was reviewed by Major Miller, Lt. K. Alexander, and Officer D. Johnson. *Id.* at p. 1. Miller reported that the short segment showed nothing unusual, but that it appeared Reynolds was resisting the escort. *Id.* at p. 9, *see also* Ex. 3A.

The medical report prepared following the incident indicates that Reynolds reported hitting his head and that he "went out for about a minute." ECF 16 at Ex. 3, p. 14. It was noted that Reynolds' hand was swollen and discolored with a small laceration and that Reynolds was unable to close his right hand for "grips." *Id*. Although Reynolds also complained his right ankle hurt because it had been fractured two weeks prior,[6] the examination revealed it was not swollen or discolored and that peripheral pulses were "palpable and strong." *Id*.

In addition to the correctional staff reports regarding the incident, an inmate, Ike Gilmore, provided a statement regarding what he had observed. ECF 16 at Ex. 3, p. 19. Gilmore states that he was cleaning up in the ASIA area when he saw Scott and Brumage escorting Reynolds to a cell when Reynolds "began to get rowdy." *Id*. Gilmore asserts that Reynolds started fighting the officers and fell to the floor "on his own free will." *Id.* Gilmore adds that, "no one threw inmate Reynolds to the floor as he stated." *Id*.

Reynolds was charged with violating disciplinary rules as a result of the incident, including assault on a staff member. ECF 16 at Ex. 3, p. 26. After a hearing on the charges, Reynolds was found guilty and the hearing officer noted that Reynolds "battered staff by grabbing CO's arm, interfered with duties, refused orders and used disrespectful language." *Id*. at p. 27. In addition, the hearing officer noted that Reynolds admitted he grabbed the officer's arm and that he used racial slurs. *Id*. at p. 28. Due to the serious nature of the charges and the fact that Brumage was injured, Reynolds was sentenced to 275 days of segregation, 235 days of diminution of confinement credits revoked, and a 6 month suspension of visiting privileges. *Id*. at pp. 28 – 29.

---

[6] An x-ray report dated September 4, 2014 indicates that Reynolds right ankle was x-rayed and no evidence of an acute fracture, dislocation or subluxation was noted. ECF 16 at Ex. 3, p. 18. Additionally, the report notes a "deformity of the 5th metatarsal bone likely from old injury." *Id*.

With regard to the incident occurring on October 24 2014, Defendants Williams and Shanholtz were involved in a use of force against Reynolds and allege the use of force was justified under the circumstances. ECF 16 at Ex. 10 and 13.[7] The incident is summarized in an investigative report prepared by M. Cutter. *Id*. at Ex. 9. Cutter interviewed Williams, Shanholtz, and Reynolds as a part of the investigation and concluded the use of force was in compliance with Division of Correction guidelines. *Id*. at p. 3. Additionally, Williams and Stanholtz gave statements regarding the incident as part of the investigation. *Id*. at pp. 6 – 7 and 8 – 9.

The report notes that on October 24, 2014, Sgt. Williams was the officer in charge of Reynolds's housing unit. At approximately 3:45 p.m., Reynolds was escorted from his cell to the shower by Williams. When all the showers were full, Williams returned to the control center. After the ten minute shower time was over, Officer Fischer returned to the shower area to remove Reynolds and escort him back to his cell, but reported to Williams that Reynolds was refusing to leave. According to Fischer, Reynolds' refusal to return to his cell was based on his objection to having a cellmate who was Black. Williams advised Fischer to leave Reynolds in the shower and he would attempt to talk to Reynolds in a few minutes. When Williams arrived at the shower at approximately 4:00 p.m., Reynolds was tying his shower bag around his neck. Shanholtz reported to the shower area to assist Williams with the situation with Reynolds. ECF 16 at Ex. 9, p. 3.

When Shanholtz and Williams returned to the shower, Reynolds had looped the shower bag strings through the bars of the shower door and was sitting on the floor of the shower, hanging by the strings. Reynolds was ordered to stand up and remove the bag from his neck by Williams, but he did not respond to the orders. Williams then unlocked the shower door and

---

[7] Although named as a Defendant in relation to the October 24, 2014 incident, Defendant Nathan Davis states that he was assigned to work in Reynolds's housing unit on that date, but was not involved in the use of force against him. ECF 16 at Ex. 12.

grasped Reynolds under his arms, lifting him enough so that Shanholtz could untie the strings from the bars. *Id*.

After the shower bag strings were untied, Reynolds became combative. He attempted to stand up, but Williams gave him an order to stay on the ground and roll over on his belly to be handcuffed. Reynolds ignored the orders and instead turned and grabbed Williams by the right arm, digging his fingernails into his right forearm. In response, Williams struck Reynolds with a closed fist punch to his chest and upper torso in an attempt to break free. Reynolds remained combative, but Williams was able to gain control of Reynolds's right hand and apply a "wrist lock." ECF 16 at Ex. 9, p. 3. Orders for Reynolds to roll over were repeated and despite continuing his initial resistance, Reynolds eventually complied. Shanholtz put his knees on Reynolds back after he had rolled over and admits to using all of his body weight to hold Reynolds down and keep him from rolling over again.[8] While Reynolds was on the ground he turned his head and attempted to spit on Williams. In response, Williams placed his right knee on the back of Reynolds's neck and head to prevent him from spitting again. Reynolds was then handcuffed and removed from the shower. *Id*. Reynolds was escorted to medical, evaluated, and found to have no physical injuries. Due to his attempt to hang himself, Reynolds was placed on fifteen minute suicide watch at the order of Dr. Kale. *Id*.

**Standard of Review**

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty*

---

[8] Records indicate that Reynolds is 5'10" and weighs 322 pounds. ECF 16 at Ex. 3, p. 16.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (U.S. 2009); *Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

<u>Eighth Amendment: Excessive Force</u>

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  This court must look at the need for application of force; the relationship between that need and the amount of force

applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, 599 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 34.

**Analysis**

Reynolds claims in his Opposition Response which consists of his unsworn statement, that the reports regarding the October 8, 2014 incident are conflicting and that he never pulled Brumage to the floor. ECF 18. Reynolds states that Johnson's report is inconsistent with the other reports because it says he got on his knees and Brumage helped him up, but says nothing about pulling Brumage to the floor. *Id*. Reynolds also claims he was handcuffed behind his back "at all times" and that inmate Gilmore's statement does not support Defendants version of the incident because it states Reynolds fell to the floor. ECF 18 at p. 3.

Reynolds's perceived inconsistency with statements made by Johnson and inmate Gilmore are actually not inconsistencies. Johnson's report confirms that Reynolds threw himself on the floor and that Brumage was pulled to the floor with him. ECF 16 at Ex. 3, p. 13. Johnson's statement regarding Reynolds getting on his knees refers to what Reynolds did after he threw himself on the floor. *Id*. Inmate Gilmore's statement does not assert that Reynolds "fell" to the floor, but indicates that Reynolds fell by his "own free will." *Id*. at p. 19. Gilmore's statement does not, however, support Reynolds's assertion that Scott threw Reynolds to the floor by hitting him in the neck. *Id*. In fact, there are no inconsistencies among the reports submitted

by Defendants and Reynolds's perceived inconsistencies do not warrant a trial on the merits of his claim. In so concluding this Court notes that Reynolds does not deny resisting the escort as asserted by all of the sworn witness statements provided by Defendants and that his assertion he was handcuffed behind his back, taken as true, does not refute that assertion. The unfortunate injury sustained to Reynolds's hand was not an injury maliciously inflicted by any of the officers involved; rather it was likely sustained during his fall to the floor.

With respect to the incident occurring on October 24, 2014, Reynolds denies trying to kill himself. ECF 18 at p. 2. Additionally, he insists that Defendant Nathan Davis was involved in the incident despite Davis's statement under oath that he was not. ECF 16 at Ex. 12. The medical report made following this incident indicates that Reynolds denied suicidal thoughts to the nurse, but he is described as "hyper talkative with rambling sentences" and related that he sometimes makes statements to get attention.[9] *Id*. at Ex. 9, p. 14. When Reynolds testified at the disciplinary hearing regarding this incident he related that he had been taken off all of his psychiatric medications, has a personality disorder, and could not recall exactly what occurred because he was "in a crying state." *Id*. at p. 27 – 28. Despite his admission he did not know for certain what occurred, Reynolds provided detailed information regarding what was said and done by the officers involved. *Id*. Reynolds also claimed he was cleared from being suicidal, but that he was held in observation for the weekend. *Id*. Because of these contradictions, his testimony was not found credible by the hearing officer. *Id*. at pp. 29 – 30.

Reynolds has not provided this Court with evidence in the form of an affidavit or declaration under oath to refute the evidence presented by Defendants, nor does he forecast evidence to be presented at a trial on the merits which would support his claims. Reynolds's

---

[9] Medical records prepared before this event indicate that Reynolds has a history of psychiatric issues. ECF 16 at Ex. 3, p. 16 ("history of mental disorder").

failure to do so requires this Court to grant Defendants Motion for Summary Judgment and enter judgment in favor of Defendants.

      A separate Order follows.

<u>May 15, 2015</u>                          ____/s/_____
Date                                    RICHARD D. BENNETT
                                        UNITED STATES DISTRICT JUDGE